WILLIAM EAGAN v. SAMUEL HINCH heir-at-law of John Hinch, deceased, and JOHN JACK, heir-at-law of Samuel Jack, deceased.

*In Chancery.*

The complainant stated in his bill, that on the 26th day of April, in the year 1780, he obtained from the court of commissioners the following certificate, to-wit:

"William Eagan this day claimed a pre-emption of 1,000 acres of land at the state price, in the district of Kentucky, on account of marking and improving the same in the year 1775, lying on a branch that runs into Greer's creek, about three-quarters or one mile west of Joseph Conway's, to include his improvement. Satisfactory proof being made to the court, they are of opinion that the said Eagan has a right to a pre-emption of 1,000 acres of land to include the above location, and that a certificate issue accordingly."

And that on the same day a certain Joseph Conway also obtained a certificate for a pre-emption of 1,000 acres of land from the said commissioners, in the following words, to-wit:.

"Joseph Conway this day claimed a pre-emption of 1,000 acres of land, at the state price, in the district of Kentucky, on account of marking and improving the same in the year 1776, lying on a small branch of Greer's creek, adjoining the lands of Isaac Greer and Isaac Power, to include his improvement. Satisfactory proof being made to the court, they are of opinion that the said Conway has a right to a pre-emption of 1,000 acres, to include the above location, and that a certificate issue accordingly."

And that after the certificates were both issued, it was then agreed upon between the said Joseph Conway and the complainant, that a division line should be run between their respective improvements, at an equal distance from each, which line should be the boundary of each of the said claims.

In consequence of which agreement, having obtained a pre-emption warrant, he entered the same with the county surveyor on the 30th day of May, 1783, in the following words, to-wit:

"William Eagan enters 1,000 acres of land on a pre-emption warrant, No. 937, on a branch of the north fork of Greer's creek, to include his improvement, and running half way to Joseph Con

way's improvement that he obtained a pre-emption for, with a square line, and to extend as far on the one side of the course between the two improvements as on the other, and the survey to be four square.

He further stated that after the agreement aforesaid the said Conway sold his claim to John Hinch and Samuel Jack, who are both since deceased; and of whom the defendants are heirs-at-law; and at the time of selling the said pre-emption right, informed the said Hinch and Jack of the agreement aforesaid.

That the said Hinch and Jack having obtained a pre-emption warrant, entered the same with the county surveyor, on the 28th day of December, 1782, in the following words, to-wit:

"Samuel Jack and John Hinch, assignees of Joseph Conway, enter 1,000 acres of land on a pre-emption warrant, No. 921, on the north fork of Greer's creek, joining the pre-emption of Eagan on the west, and joining Briscoe's or Dolan's on the north, and Fields' to the south, and running east and south-east for quantity."

Caused the same to be surveyed in the manner described in the connected plat, which is contrary to the agreement aforesaid, and obtained a patent of elder date than that obtained by him, on his survey, made strictly agreeably to his entry, which was made in conformity to the said agreement: and prayed for a conveyance.

John Jack, one of the defendants, who was of full age, admitted by his answer, that he had heard Joseph Conway say there was such an agreement as stated by the complainant, and said that he believed the complainant's claim was a just one, and that he was willing to convey.

The other defendant, being an infant, answered by guardian, and prayed that the complainant might be put on the proof of the agreement.

The annexed connected plat, No. 22, was returned in this cause, of which the following is an explanation;

1 2 3 4, William Eagan's pre-emption according to survey. 5 6 7 8, Hinch and Jack's heirs, assignees of Conway, do. 3 9 5 10, the interference. A, Eagan's improvement. H, and I, Hinch and Jack's, or Joseph Conway's improvement.

The question of fact was submitted to the court. There were two depositions, William Crow's and John Sellers'.

Crow was present when a conversation took place between the complainant and John Hinch, deceased, in the course of which, the complainant told Hinch, he had run more than half way between the two improvements, and Hinch told him not to bring suit, for he would give it up.

And Sellers heard John Hinch say, he would not stand a suit about it.

There may have been other testimony also produced at the trial, but if there was, no memorandum of it is preserved.

BY THE COURT.—The only material questions arising in this suit, which have been submitted to the court, seem to be :

*First.* Was a dividing line between the two pre-emptions agreed on by the original claimants, Eagan and Conway to intersect at the half way point, a line which would pass through the center of their improvements, and to run at right angles thereto ?

*Second.* Was this dividing line made known to, and acquiesced in by Hinch and Jack, who purchased the said Conway's pre-emption ? Both points having been proved in the affirmative, to the satisfaction of the court, they are of opinion that the defendants Hinch and Jack are bound thereby ; and therefore that the complainant Eagan recover from the said defendants all the land contained within their survey contrary to the said agreement, and the same is decreed accordingly.